UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Bellamy, #261153; | ) | C/A No. 0:05-1295-DCN-BM |
|                  Plaintiff; | ) | |
| vs. | ) | **Report and Recommendation** |
| Jon Ozmint, Director, South Carolina Department of Corrections (SCDC); and P. Douglas Taylor, Warden, Ridgeland Correctional Institution; | ) | |
|                  Defendants. | ) | |

The Plaintiff, Michael Bellamy, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42 United States Code § 1983. Plaintiff is incarcerated at the Ridgeland Correctional Institution (RCI), in Ridgeland, South Carolina. He alleges that he is being exposed to environmental tobacco smoke (ETS), and seeks monetary damages and injunctive relief from this alleged condition. The narrative of the Complaint is set forth verbatim hereafter:

> Upon my arrival at this Institution in June of 2003, I was placed in a dorm that was specifically designated as a smoking Unit. Upon futher [sic] research, I found that there was in fact a dorm here designate [sic] as a non-smoking dorm which was the Savannah dorm in which I presently resides [sic]. I constantly find it difficult to walk for exercise or for any other reason due to the large amount of Inmates who smokes [sic] on a constant basis here in a dorm designated as a non smoking dorm by Warden P. Douglas Taylor per a Memo posted and signed by him on October 30, 2001 (copy enclosed). I have had personal conversations with him on several occassions [sic] in an effort to either remove all Inmates who currently purchase tobacco products from the canteen to include lighters, etc. I constantly complain to the Officer on duty and almos [sic] always recieved [sic] the same answer, it is very difficult to see everyone that is smoking, of course it is when the Officer that is currently assigned to the dorm is a crontic [sic] smoker him/herself. I have had numerous discussions with the Dorm lietenant [sic] in an effort to come up with solutions, when in fact I am in no way, shape form nor fashio [sic] capable of another Inmates actions, therefore if I was then someone

1



> could commit a infraction [sic] and they would be allowed to displined [sic] me for their action.  There is just no way I can be held in captivity and be force [sic] to have my health endangered by second hand smoke.  This is probably the only State that allows people under the legal age limit to be incarcerated and then be allowed to go to the Institution Canteen and purchase cigarettes or any other tobacco product that had they not been incarcerated, they would probably have never picked up the habit or even started to smoke in the first place.  Letters written to people that are allowed to make such decision as not even sell tobacco products to Inmates in a non-smoking dorm has went unanswered and going through the Inmate grievance system has only resulted in the same results, therefore I have no other alternative except to ask the Honorable Federal System to order a temporary ban on the use, sell [sic], or possession of tobacco products to include and not exclude Staff members.  To my understanding it is currently agains [sic] State Law to smoke inside of public facility.  I totally agree with that law and sincerely wish that something is soon properly done to stop OUR health from being endangered to a further extinct [sic]. We as inmates can complain about anything, but I am due for release in a couple of years and my health means the world to me if I am to return to Society and work for the things I want from life and be the productive citizen that I should have been in past years, but how can I accomplish this if my health is bad due to second hand smoke.  I have enclosed copies of all responses that I have recieved [sic] in turn and ask that due to my limited access to the Courts that the Honorable Court appoints me a very experienced attorney to assist in this matter.  Although there may be some repercussions from this matter, I personally felt that it is something that had to be done before futher [sic] damage is done to the many people here that are not able to assist themselves.  With the System constantly being filled to its' [sic] maximum capacity and the Inmates are coming in at a much younger age I am almost certain that this matter needs to be addressed immediately.  This matter has gotten so out of hand that the Staff is asking for other inmates to snitch and do their job while they are away from their post doing other things.

[1-1, pp. 3-4.]  Plaintiff seeks unspecified compensation plus an order from this Court requiring the Defendants to ban the use, sale or possession of tobacco products by inmates and staff and directing them to treat any health problems that he may experience in the future.

Plaintiff has attached to his Complaint copies of several documents.  Included is the memorandum from Defendant Taylor, dated October 30, 2001, that banned smoking in the Beaufort or Savannah Living Units.  Noncompliance with the directive would result in disciplinary action.  "Request to Staff Member" forms (SCDC Form 19-11), dated June 5, 2004 and February 12, 2005 are also attached.  Plaintiff's first Form 19-11 was addressed to

2



Defendant Taylor, who responded on June 14, 2004 that efforts were being made to prevent smoking in Plaintiff's living unit.  Defendant Taylor also urged Plaintiff to report violations, since staff members were not physically able to witness all violations themselves. Plaintiff has also written letters to South Carolina Governor Mark Sanford and SCDC Director Jon Ozmint, and filed a "Complaint Form" which appears to be a local RCI form directed to the Inmate Representative Committee (IRC).  This document is undated, but bears a note from the IRC Co-Chairman expressing the Committee's concern about the problem.

## Discussion

As Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction.  Hughes v. Rowe, 449 U.S. 5 (1980);  Estelle v. Gamble, 429 U.S. 97 (1976);  Haines v. Kerner, 404 U.S. 519 (1972);  Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978);  Gordon v. Leeke, 574 F. 2d 1147 (4th 1978).   Even under this less stringent standard, however, this *pro se* Complaint is still subject to summary dismissal. The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

First, Plaintiff's attachments reveal that he has not exhausted his available administrative remedies.  The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a), provides that: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The United States Supreme Court has held this to be a mandatory provision, which "applies to all inmate suits about prison life,

3



whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).

SCDC Policy/Procedure GA-01.12, the "Inmate Grievance System" (hereafter, the "System"), provides administrative relief for all prisoners.[1]  Under this system, inmates are required to attempt informal resolution before filing a grievance.  Then, the actual grievance process consists of two stages: Step One (SCDC Form 10-5) is reviewed by the administration of a given correctional institution; Step Two (SCDC Form 10-5A) is reviewed within SCDC above the level of the institution warden.   SCDC deadlines for review of Step One grievances and Step Two appeals are forty (40) and sixty (60) days respectively.[2]  The SCDC also conducts an ongoing review of the System through an Executive Committee which meets at least bi-annually to consider staff and inmate suggestions or problems.  For this purpose, inmates are directed to use a form called "Request to Staff Member" (SCDC Form 19-11).  The Form 19-11 is not a stage in the grievance process itself.  Hence, by filing 19-11 forms, the Plaintiff did not initiate the grievance process.  His claim that a Step One grievance, purportedly filed on an unspecified date, received no response is insufficient in and of itself to demonstrate a serious pursuit of administrative relief. Therefore, this action should be dismissed for failure of the Plaintiff to properly exhaust his administrative remedies prior to bringing this lawsuit.

---

[1] – On May 9, 1996, this court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the requirements of 42 U.S.C. § 1997e(a)(2).  See Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996).

[2] – The current SCDC Policy/Procedure GA-01.12 "Inmate Grievance System" allows forty (40) calendar days for a Warden to respond to Step One and sixty (60) calendar days thereafter for a determination upon a Step Two appeal. See paragraphs 14.3 and 14.4.  Moreover, the directive provides that "in all instances, grievances will be processed from initiation to final disposition within 105 days except when the Chief/Designee, Inmate Grievance Branch, specifically agrees to a request for an extension."  See paragraph 11.  The maximum extension period is limited to seventy-five days, with the specific provision that no grievance process may exceed one hundred eighty days.



Additionally, even if Plaintiff had exhausted his administrative remedies, the allegations of his Complaint do not appear to set forth a claim cognizable under § 1983.  While the United States Supreme Court recognized in Helling v. McKinney, 509 U.S. 25 (1993), the right of a prisoner under the Eighth Amendment to be free from such ETS as would pose an unreasonable risk of serious damage to health, Helling involved a prisoner who was housed with a cellmate who smoked five packs of cigarettes a day.  In its holding, the Supreme Court outlined a twofold analysis to be applied in determining whether a constitutional claim was presented: (1) objective evidence of the ETS hazard; and (2) subjective evidence of deliberate indifference by prison officials.   This method of analysis derives from other and previous major cases on prison conditions.  Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976).

While Helling does not define what would constitute unreasonably high levels of ETS, it is significant to note that Plaintiff does not complain of smoking cell mate(s); rather, Plaintiff's complaint is about the mere presence of tobacco smoke in his dorm while he moves about the prison facility.  In any event, even if Plaintiff could satisfy the objective element of his claim, it is clear from Plaintiff's own attachments that the Defendants are not being deliberately indifferent to the health threat posed by ETS.  To the contrary, Plaintiff's own filings with this Court show that efforts are being made to control the problem.  Plaintiff's complaint that these efforts have not succeeded to his satisfaction cannot suffice to state a claim of deliberate indifference under 42 U.S.C. § 1983.  See Scott v. District of Columbia, 139 F. 3d 940 (D.C. App. 1998), where a prison inmate complained that prison officials had not curbed smoking at the Lorton Correctional Complex.  The Court of Appeals for the District of Columbia set aside a trial court injunction in that case, observing:



> [I]t is hard to see how imperfect enforcement of a nonsmoking policy can, alone, satisfy Helling's subjective element. That the District even has such a policy militates against a finding of deliberate indifference. The Supreme Court said as much in *Helling*, 509 U.S. at 36, 113 S.Ct. at 2482. See also *Davidson*, 920 F.Supp. at 309; *Pryor-El*, 892 F.Supp. at 267

139 F. 3d at 944.

At most, Plaintiff's claim against the Defendants as set forth in his Complaint amounts to a possible injury caused by a violation of some state law duty of care or requirement, or even negligence. However, negligence is not actionable under § 1983; See Davidson v. Cannon, 474 U.S. 344 (1986); Daniels v. Williams, 474 U.S. 327 (1986); Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987); nor does § 1983 impose liability when duties of care under state law have been violated. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989); Daniels v. Williams, supra ("Jailers may owe a special duty of care to those in their custody under state tort law...but for the reasons previously stated we reject the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept"); Baker v. McClellan, 443 U.S. 137, 146 (1976) (§ 1983 claim does not lie for violation of state law duty of care); Paul v. Davis, 424 U.S. 693, 697 (1976).

Hence, without substantial changes or revisions to his allegations, Plaintiff's claim should be pursued administratively or in state court in an action under the South Carolina Tort Claims Act, S.C. Code Annotated §15-78-10 through § 15-78-200. See S.C. Code Annotated § 15-78-60(25).

## **CONCLUSION**

Based on the foregoing, it is recommended that the within Complaint be dismissed



without prejudice and without issuance or service of process. Plaintiff's attention is directed to the Notice on the following page.

                                      Bristow Marchant
                                      United States Magistrate Judge

May 18, 2005
Columbia, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are not sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded pro se in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a pro se litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

8